O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD GUERRA, | ) | NO. EDCV 09-02274-MAN |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff filed a Complaint on December 22, 2009, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for social security income ("SSI"). On March 2, 2010, the parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on August 16, 2010, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for a period of SSI on March 19, 2008.[1]  (Administrative Record ("A.R.") 98-100.)  Plaintiff claims to have been disabled since February 27, 2008,[2] due to back injury and bipolar disorder.  (A.R. 103, 108.)  Plaintiff has past relevant work experience as a telephone solicitor, landscape laborer, fast food cook, golf cart attendant, greenskeeper, and egg processor.  (A.R. 13, 109.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 46-51, 54-59), plaintiff requested a hearing (A.R. 60).  On July 28, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Michael D. Radensky ("ALJ").  (A.R. 15-43.)  Vocational expert David Reinhart also testified.  (A.R. 38-39, 41-42.)  On September 23, 2009, the ALJ denied plaintiff's claim (A.R. 8-14), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-4).  That decision is now at issue in this action

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff has not engaged in substantial gainful activity since February 27, 2008, the alleged onset date of plaintiff's

---

[1]    It appears that plaintiff filed disability claims in the past; however, because those claims were denied and not appealed, those claims are not at issue here.

[2]    Plaintiff's onset date was changed to February 27, 2008, to comport with his work history.  (A.R. 10, 103.)

claimed disability.  (A.R. 10.)  The ALJ determined that plaintiff has the following severe impairments:  status post lumbar surgery, history of spinal meningitis, and anxiety.  (*Id.*)  The ALJ also determined that plaintiff does not have an impairment or combination of impairments that meets or equals in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).  (A.R. 496.)  Additionally, the ALJ found that plaintiff's pain allegations were not entirely credible.  (A.R. 13.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 416.967(b).  (A.R. 11.)  In pertinent part, the ALJ determined that "[n]on-exertionally, [plaintiff] is able to perform work in a non-public setting and [plaintiff] should avoid intense interpersonal interactions with co-workers, supervisors, and members of the public."  (*Id.*)

Based on plaintiff's RFC, the ALJ determined that plaintiff was capable of performing his past relevant work as an egg processor.  (A.R. 13.)  Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act since February 27, 2008.  (A.R. 14.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  <u>Orn v. Astrue</u>, 495

3

F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance."  <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."  <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  <u>Desrosiers v. Sec'y of Health and Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"  <u>Robbins</u>

4

1  v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v.
2  Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d
3  at 679.

5                              **DISCUSSION**

7      Plaintiff makes the following claims:  (1) the ALJ did not consider
8  plaintiff's pain testimony properly; (2) the ALJ failed to consider
9  plaintiff's alleged side effects from medications; (3) the ALJ did not
10 consider the opinions of plaintiff's treating physicians properly;[3] and
11 (4) the ALJ improperly determined that plaintiff did not meet or equal
12 Listing 1.04.  (Joint Stipulation ("Joint Stip.") at 3-4.)

14 **I.   The ALJ's Rejection Of Plaintiff's Pain Testimony Was Improper.**

16      The law is well-settled that, once a disability claimant produces
17 evidence of an underlying physical impairment that is reasonably likely
18 to be the source of his subjective symptom(s), the subjective testimony
19 as to the severity of the symptoms must be considered.  Moisa v.
20 Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947
21 F.2d 341, 345 (9th Cir. 2001)(*en banc*); *see also* 20 C.F.R. § 416.929(a)
22 (explaining how pain and other symptoms are evaluated).  "Unless an ALJ
23 makes a finding of malingering based on affirmative evidence thereof, he
24 or she may only find an applicant not credible by making specific
25 findings as to credibility and stating clear and convincing reasons for

27      [3] Although presented separately, for purposes of clarity, the
28 Court will address plaintiff's claims regarding his treating physicians together.

                                    5

each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006); see Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996)("Once a claimant meets the *Cotton* test [Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986)] and there is no affirmative evidence suggesting [he] is malingering, the ALJ may reject the claimant's testimony regarding the severity of [his] symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); see also Lester v. Chater, 81 F.3d 821 (9th Cir. 1996). Further, the ALJ's credibility findings must be "sufficiently specific" to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. Rollins v. Massanari, 261 F. 3d 853, 857 (9th Cir. 2001).

In this case, the ALJ concluded that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 13.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason for rejecting plaintiff's credibility must be "clear and convincing."

In his decision, the ALJ stated that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (A.R. 13.) At the hearing, plaintiff testified that his back problems keep him from working and make "it real hard to like sit down for long periods of time or stand up or anything

like that." (A.R. 29.) Plaintiff also testified that he is most comfortable lying down and spends five hours out of an eight-hour day lying down. (A.R. 29-30.) While the ALJ may find plaintiff's allegations of back pain to be not credible, the ALJ's boilerplate statement does not constitute a clear and convincing reason, as required, for rejecting plaintiff's pain testimony.[4] Additionally, the ALJ's boilerplate statement is not "sufficiently specific" to allow this Court to determine whether the ALJ rejected plaintiff's testimony on permissible grounds.

To further discredit plaintiff's pain testimony, the ALJ stated that "the medical evidence is clearly suggestive of drug-seeking behaviors." (A.R. 11.) While evidence of drug seeking behavior could detract from plaintiff's credibility, the evidence cited by the ALJ -- namely, that plaintiff requested that his pain medication be renewed at each medical visit (A.R. 11) -- does not constitute substantial evidence to support such a conclusion.[5] In fact, instead of detracting from

---

[4] Further, although the ALJ may find that plaintiff's "problems with working and maintaining employment are much more related to his mental problems than his back pain" (A.R. 12), the ALJ, nevertheless, must give clear and convincing reasons for rejecting plaintiff's pain testimony.

[5] "Several cases approve discounting the testimony of a claimant who has engaged in drug-seeking behavior, . . . but none has defined what constitutes drug-seeking behavior." Kellems v. Astrue, 2010 U.S. App. LEXIS 13263, *8 (7th Cir. 2010). However, "[c]laimants in these cases do have a common thread, . . . each obtained, or attempted to obtain, pain medication by deceiving or manipulating a medical professional." Id.; see, e.g., Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Simila v. Astrue, 573 F.3d 503, 519 (7th Cir. 2009); Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009); Berger v. Astrue, 516 F.3d 538, 546 (7th Cir. 2008); Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003). In this case, however, the ALJ cited no evidence that plaintiff attempted to obtain pain medication by deceiving or manipulating a medical professional.

7

plaintiff's credibility, plaintiff's behavior could support a finding of significant pain. *See* <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)(noting that plaintiff's "constant quest for medical treatment and pain relief" refuted the ALJ's finding that claimant lacked credibility about her pain and physical limitations).

Moreover, while defendant offers several reasons to explain the ALJ's conclusion regarding plaintiff's alleged drug-seeking behaviors, the Court cannot entertain these post hoc rationalizations. *See, e.g.*, <u>Connett</u>, 340 F.3d at 874 (finding that "[i]t was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

**II.   The ALJ Failed To Consider The Side Effects Of Plaintiff's Medications.**

In evaluating symptoms, SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." *See also* 20 C.F.R. § 416.929(c)(3)(iv).  The Ninth Circuit has held that "the side effects of medications can have a significant impact on an individual's ability to work and should figure in the disability determination process." <u>Varney v. Sec'y of Health and Human Servs.</u>, 846 F.2d 581, 585 (9th Cir. 1988)(superseded by statute on other grounds as stated in <u>Bunnell</u>, 947 F.2d at 345).  Thus, if the ALJ "chooses to disregard a claimant's testimony as to the subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony." *Id.*

In this case, the ALJ failed to provide specific reasons for rejecting plaintiff's testimony regarding the side effects of his medications.   At the hearing, plaintiff testified that his pain medications, Norco and Methadone, make him drowsy.   (A.R. 30.) Plaintiff also testified that Methadone makes him nauseous, and his nausea lasts for a "couple [of] hours," every day.[6]  (A.R. 32.)  The ALJ's decision, however, does not reference plaintiff's alleged side effects, and therefore, it is unclear whether the ALJ considered plaintiff's alleged side effects and/or the effect they may have on his ability to function in the workplace.[7]  Further, although defendant cites various reasons to disregard plaintiff's alleged side effects, the Court cannot affirm the ALJ's decision based upon post hoc rationalizations. *See* <u>Connett</u>, 340 F.3d at 874.

III. **<u>The ALJ Did Not Commit Reversible Error In Connection With His Consideration Of The Opinions Of Plaintiff's Physicians.</u>**

An ALJ must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester</u>, 81 F.3d at 830.   To reject the contradicted opinion of a treating or examining physician, an ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.  However, an ALJ "need not discuss *all* evidence

---

[6]     The record also contains reports indicating that Norco causes plaintiff "stomach problems." (*See, e.g.*, A.R. 147, 159.*)*

[7]     To the extent the ALJ rejects plaintiff's alleged side effects based on his "drug-seeking behaviors," the ALJ's reasoning is unpersuasive for the reasons set forth *supra*.

9

presented" to him.  <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984)(citation omitted; emphasis in original); *see also* <u>Howard v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003)(ALJ need not discuss every piece of evidence).  An ALJ must explain only why "significant probative evidence has been rejected."  <u>Vincent</u>, 739 F.2d at 1395 (internal quotations and citation omitted).

A.  <u>Dr. Raval</u>

Plaintiff contends that the ALJ did not consider the opinion of plaintiff's treating physician, Niren Raval, D.O., regarding plaintiff's bowel and urinary incontinence, properly.  No reversible error was committed with respect to the consideration of Dr. Raval's treatment notes.

The medical record contains two treatment notes from Dr. Raval that document plaintiff's complaints and symptoms of urinary and fecal incontinence. (A.R. 206, 245.)  In pertinent part, the later treatment note states that plaintiff's incontinence problems were "significant" following surgery, but have "gotten better."  (A.R. 245.)

Although the ALJ did not reference Dr. Raval's treatment notes specifically in his decision, the ALJ did reference the medical records from Arrowhead Regional Medical Center, where Dr. Raval practiced.  The ALJ noted that these medical records made mention of plaintiff's "incontinence secondary to an old condition of spinal meningitis." (A.R. 11.)  Contrary to plaintiff's contention, however, the record

10

1  contains no opinion[8] by Dr. Raval or any other physician that plaintiff's

2  incontinence causes him any limitations.  Therefore, it is unclear what

3  opinion, if any, the ALJ failed to consider.  Moreover, at the hearing,

4  plaintiff testified that he did not think his "urine problems" kept him

5  from working.  (A.R. 32.)  Accordingly, any error committed by the ALJ

6  in failing to consider Dr. Raval's treatment notes was harmless.[9]

7

8       B.  Dr. Hudson

9

10      Plaintiff also contends that the ALJ did not consider the findings

11 of plaintiff's treating psychiatrist,[10] Marcia Hudson, M.D., properly.

12 Plaintiff's chief complaint appears to be that the ALJ did not consider

13 plaintiff's Global Assessment of Functioning (GAF) score of 45 as

14 assessed by Dr. Hudson.  On December 7, 2007, approximately two and a

15 half months prior to plaintiff's alleged disability onset date, Dr.

16 Hudson performed an Adult Psychiatric Evaluation on plaintiff.  At that

17

18 _____

19      [8]    Pursuant to 20 C.F.R. § 416.927(a)(2), "[m]edical opinions are
   statements . . . that reflect judgments about the nature and severity fo
20 your impairment(s), including your symptoms, diagnosis and prognosis,
   what you can still do despite impairment(s), and your physical or mental
   restrictions."
21

22      [9]    Further, as defendant properly notes, plaintiff's subjective
   symptoms alone are insufficient to establish a medically determinable
23 physical impairment.  Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir.
   2005)("under no circumstances may the existence of an impairment be
24 established on the basis of symptoms alone'")(quoting SSR 96-4p); SSR
   96-4p, 1996 SSR LEXIS 11 at *3, 1996 WL 374187, at *1 ("regardless of
25 how many symptoms an individual alleges, or how genuine the individual's
   complaints may appear to be, the existence of a medically determinable
26 physical or mental impairment cannot be established in the absence of
   objective medical abnormalities; i.e., medical signs and laboratory
   findings").
27

28      [10]   Dr. Hudson is viewed more properly as an examining physician,
   because she appears to have examined plaintiff only once.

                              11

1  time, Dr. Hudson assessed plaintiff with a GAF score of 45.  (A.R. 201.)

2

3       The ALJ's failure to discuss plaintiff's GAF score does not

4  constitute reversible error.  Under the Social Security regulations, an

5  ALJ is not required "to take the GAF score into account in determining

6  the extent of an individual's disability; while the scores may help the

7  ALJ assess the claimant's disability, it is not essential and the ALJ's

8  failure to rely on the GAF does not constitute an improper application

9  of the law."  Quintanar v. Astrue, 2010 U.S. Dist. LEXIS 26637, *26-*27

10  (C.D. Cal. Mar. 19, 2010)(citations omitted); 65 Fed. Reg. 50746, 50764-

11  65 (August 21, 2000) ("The GAF scale . . . does not have a direct

12  correlation to the severity requirements in our mental disorders

13  listing."); McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008)

14  (finding the ALJ's failure to address plaintiff's GAF scores was not

15  legal error); see also Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241

16  (6th Cir. 2002)("The ALJ's failure to reference the GAF score in the

17  RFC, standing alone, does not make the RFC inaccurate.").

18

19       Moreover, contrary to plaintiff's contention, there is no

20  indication that the ALJ "ignored" or "disregarded" Dr. Hudson's

21  findings.  The ALJ referred to the treatment records from San Bernardino

22  County Mental Health, Phoenix Community Counseling, during the relevant

23  time period when Dr. Hudson examined plaintiff.  (A.R. 12.) In addition,

24  Dr. Hudson's findings are not inconsistent with the ALJ's RFC

25  determination, which recognized plaintiff's severe mental impairments

26  and, thus, included work-related functional limitations.  Further, the

27  ALJ's findings are supported by substantial evidence.  In fact, Dr.

28  Hudson did not opine that plaintiff had any disabilities, impairments,

1  or work-related functional limitations.[11]

2

3      Accordingly, there is no basis for finding error in connection with

4  the ALJ's consideration of Dr. Hudson's opinion.

5

6  **IV.   The ALJ Did Not Err In Determining That Plaintiff's Impairments Did**

7       **Not Meet Or Equal Listing 1.04.**

8

9      Plaintiff contends that the ALJ failed to analyze and consider

10 plaintiff's combined impairments properly before determining that they

11 did not meet or equal the impairments set forth in Listing 1.04. (Joint

12 Stip. at 26-29, 32.)  No material error occurred.

13

14     Plaintiff bears the burden of proving that his impairment or

15 combination of impairments meets or equals the criteria of a Listing.

16 Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); *see* Sullivan v.

17 Zebley, 493 U.S. 521, 530-31 (1990)(burden is on the claimant to show

18 that his or her impairment meets all of the specified medical criteria

19 for a Listing or to present medical findings equal in severity to all

20 the criteria for the one most similar listed impairment).  The physical

21 and mental conditions contained in the Listings are considered so severe

22 that "they are irrebuttably presumed disabling, without specific finding

23 as to the claimant's ability to perform his past relevant work or any

24 other jobs."   Lester, 81 F.3d at 828; *see* Zebley, 493 U.S. at 532

25

26         [11]   Moreover, as defendant properly noted, a week before
   plaintiff's GAF score was assessed, plaintiff admitted to receiving
27 unemployment benefits (A.R. 200) -- benefits that are premised on an
   admission that the claimant is able and willing to work. (Joint Stip.
28 at 20.)

(noting that the Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary").

An ALJ must evaluate the relevant evidence to determine whether a claimant's impairment or impairments meet or equal one of the specified impairments set forth in the Listings. Lewis, 236 F.3d at 512; 20 C.F.R. § 416.920(a)(4)(iii). A "boilerplate finding is insufficient to support a conclusion that a claimant's impairment" does not meet or equal a Listing. Lewis, 236 F.3d at 512; see, e.g., Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)(noting that the ALJ's unexplicated finding at Step Three was reversible error). An ALJ's lack of formal analysis and findings at Step Three, however, will not constitute reversible error when:  the ALJ's subsequent discussion of the relevant medical evidence supports a conclusory finding; and with respect to equivalency, plaintiff fails to proffer a theory or evidence showing that his combined impairments equal a Listing. Lewis, 236 F.3d at 513-14.

In this case, plaintiff failed to carry his burden with respect to establishing that his impairments meet or equal the impairments set forth in Listing 1.04.  Plaintiff presented no evidence of nerve root compression or spinal arachnoiditis, which are necessary impairments to support a Listing 1.04A or a Listing 1.04B finding, respectively. Zebley, 493 U.S. at 530 (noting that "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria"). With respect to Listing 1.04C, even if the Court were to accept all of plaintiff's alleged impairments, plaintiff, at best, meets some, but not all, of the requisite medical criteria.  Critically,

14

1  plaintiff fails to present <u>any</u> evidence that he has an "inability to
2  ambulate effectively"[12] -- a specified medical criteria for a Listing
3  1.04C finding. *Id.* (noting that "[a]n impairment that manifests only
4  some of [the specified medical] criteria, no matter how severely, does
5  not qualify"). Additionally, plaintiff fails to proffer a theory or
6  evidence showing that his combined impairments equal a Listing.
7  Accordingly, plaintiff did not meet his burden.

8

9      In addition, the ALJ's Listing-related evaluation sufficed under
10 the circumstances of this case.   The ALJ stated that plaintiff's
11 "impairments do not singly or in combination cause the severity of
12 symptoms to meet or equal a physical or mental Listing.  This finding is
13 supported by the opinions of the State Agency reviewing physicians,
14 which are discussed in more detail in finding five."  (A.R. 10.)   In
15 finding five, the ALJ discussed plaintiff's physical impairments,
16 diagnoses, and symptoms (A.R. 11), and he concluded that "[t]he medical
17 evidence does not document any musculoskeletal impairment that meets or
18 equals the severity of listing 1.04" (A.R. 12).  In so concluding, the
19 ALJ gave "great weight to the evaluation and assessment made by the
20 State Agency reviewing physicians (Exs. 4F, 5F)."  (*Id.*)  As defendant

21 ────────────────────

22     [12]   As defined by Section 1.00B2 of the Listings, an "inability to
   ambulate effectively" means an "extreme limitation of the ability to
23 walk; *i.e.*, an impairment(s) that interferes very seriously with the
   individual's ability to independently initiate, sustain, or complete
24 activities."   Ineffective ambulation is "defined generally as having
   insufficient lower extremity functioning . . . to permit independent
25 ambulation without the use of a hand-held assistive device(s) that
   limits the functions of both upper extremities."   *See* Section
26 1.00B2b(1).    This provision cites as "examples," *inter alia*, an
   "inability to walk without the use of a walker, two crutches or two
27 canes" or an "inability to use standard public transportation" or an
   "inability to carry out routine ambulatory activities, such as shopping"
28 or an "inability to climb a few steps at a reasonable pace with the use
   of a single hand rail."  *See* Section 1.00B2b(2)

15

properly notes, neither the State Agency reviewing physicians nor plaintiff's physicians opined that plaintiff's combined impairments met or equaled a listing.  (Joint Stip. at 30.)  Further, as discussed above, given that plaintiff did not present evidence or proffer a theory that he meets or equals a 1.04 Listing, any lack of formal analysis by the ALJ does not constitute reversible error.

**V.    Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179-81.

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record).

16

On remand, the ALJ must correct the above-mentioned deficiencies and errors.   Specifically, the ALJ needs to revisit and reconsider plaintiff's pain testimony and reported side effects from his medications as well as the effect, if any, they have on plaintiff's ability to work.   Further, should the ALJ reject plaintiff's allegations of pain or medication side effects, the ALJ must set forth clear and convincing reasons for so doing supported by the requisite substantial evidence.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   December 7, 2010

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

17